May it please the court, George Vi for the appellant, Mr. Batamula. This is a 2255 appeal from the summary denial of Mr. Batamula's motion to vacate. It arises under Padilla and immigration consequences from his guilty plea. The appellant's position is that the district court had erred by a summary disposition of this on summary judgment, had failed to conduct an evidentiary hearing on Mr. Batamula's allegations. We've requested remand to develop the record on the merits of the allegations related to the ineffective assistance of counsel, the information that was provided to Mr. Batamula about the immigration consequences of his plea, and the prejudice question. As the case has developed since the panel opinion, and at the time of the panel opinion, the government had moved just before argument to summarily remand the case, agreeing that the record in this case needed to be developed on the merits of the allegations. And I believe that that motion to summarily remand was filed the Friday before we had oral argument here. Since that time, from the supplemental briefing, the government's taken the position that the record does not need to be developed, contrary to appellant's position, because the court's opinion, and I believe KO'd case, imposes a totality of the circumstances analysis. And then under that analysis, we can now move forward with the limited record we had here that was summarily disposed of by way of summary judgment, and instead assess whether Mr. Batamula was prejudiced by what I think is the undisputed, ineffective assistance of his counsel. And I say that, one, based on the position that the government has taken in the supplemental brief. And that is, the summary judgment record below, there were two grounds argued by the government in opposition to the 2255 motion. One was that Mr. Batamula had waived his right to appeal. And after the certificate issued in this case, the government took a position they would not enforce that waiver. So one of the two grounds for summary judgment below disappeared. The district court had ruled, first and foremost, the district court had ruled that summary judgment was appropriate against Mr. Batamula because he'd waived the right to appeal. And the government conceded that given the nature of Mr. Batamula's complaints about the ineffective assistance of his counsel, that it would be unfair to enforce that waiver against him, and they do not enforce it on this appeal. That left one issue, and that issue was whether Mr. Batamula had been advised at all about the immigration consequences of his guilty plea. The affidavit from his trial counsel, from his plea counsel, said, I did not advise him of any consequences about it other than, parenthetically, if any, what is said in the plea agreement. Well, the plea agreement is in the record, and the government concedes that there's nothing about immigration consequences in the plea agreement. So there was no evidence that Mr. Batamula was advised about any of the immigration consequences. So the question became, and the reason that the summary judgment was granted, other than this waiver that's been abandoned on appeal, was the district court's sole statement to Mr. Batamula and the other person that was being rearranged, it is likely you will be deported. And the district court's sole reason for granting summary judgment was that that statement alone was sufficient to remove any prejudice from the failure of his attorney to provide any information about the immigration consequences. Do you believe that the Coyote totality of the circumstances should be applied? As a rule? As a test. As a test? I can see the ability of a court to apply the totality of the circumstances test when it's been developed in the trial court, when there's a basis for doing it in the trial court. So you would not be opposed to the court using this test but on remand? I think that this court, now sitting in Vaught, needs to provide some guidance about what is appropriate to consider under the totality of the circumstances. Haven't we? Well, I meant in this case. For example, I don't believe, and this was the issue at least at the panel opinion stage, the question, the critical question, were the statements of the court relevant to consider in the totality of the circumstances when you're looking at whether the client was prejudiced by the ineffective assistance of his counsel. And our position was no. That that was not an appropriate factor to consider. Don't most other circuits use a totality of the circumstances type approach and they do consider the statements of the court but they also consider other factors? I do think that that's what many of the other circuits use. On the one hand, you have like the Rodriguez-Vega case in the Ninth Circuit where they were looking specifically at what was said, as we did at the panel stage here, was looking at what was said by the judge and saying that's not adequate. That really plays no role in whatever the analysis is of the totality of the circumstances. The issue here is that the government has expanded after the fact on appeal, in fact has supplemented the record with a detention hearing long after the case has been briefed, argued once, well past summary judgment, to try to expand the circumstances that the court would look at if it applied a totality of the circumstances argument. Do you have circumstances that you would put into the record if you were able to go back? Not at this stage. Our position was on the facts that were developed in the summary judgment stage that the court had committed an error of law because the court had relied upon its very short statement at the plea colloquy that that is not a substitute for the duties and the obligations of the attorney, fails in several ways to give the client the information that it needs timely, doesn't involve an investigation. So I can be clear. Is your position that if we reverse and remand, the district court could not resolve this Hill v. Lockhart question on the existing record? That is correct. So you feel that there has to be witness testimony? Yes. Okay. Could the government call its own prosecutor to say we discussed immigration consequences? Anything under the totality test that would say they couldn't? That they discussed immigration... That they told Mr. Batamula in extensive plea negotiations? I guess that if the testimony was otherwise admissible, I guess they could... Could the government call his immigration attorneys that he had at least through the detention hearing and say did you tell him even if Mr. Sims didn't? Any reason under totality that Judge Lake wouldn't have to go into that? I think that could be done. And the suggestion was on the motion to supplement the record that that immigration attorney had somehow testified differently in the affidavit regarding the... Would the government also be able to call Mr. Batamula and say your affidavit says you didn't discuss this with Mr. Sims but you also had immigration attorneys so Mr. Batamula, the defendant, now would be testifying as to whether he knew and understood the consequences but from his immigration attorney. Is there any reason that wouldn't now have to be inquired into? I don't know that they could have compelled him to testify. I agree about... And what I was suggesting was in answer to your question, the attorney who testified by affidavit who said no one discussed the immigration consequences of the plea with Mr. Batamula versus the information that was deduced at the detention hearing where they were talking about... Well, the attorney is Mr. Sims and he stayed two sentences. One of them was I did discuss immigration consequences to the extent parentheses if any in the plea. So I would think the government would want and Judge Lake would be fully entitled to say are you conceding you did or you didn't discuss immigration consequences? That's not clear to me. So we don't even know the answer to prong one on this record. No, I would disagree, Your Honor. The affidavit... And I think the government's conceded that. The affidavit of Mr. Sims was... And this is page 90 of the record. He said I represented Mr. Batamula in connection with a two-count federal indictment. I advised my client on immigration consequences solely based on the language, if any, of the plea agreement provided by the office. I did not advise him that conviction in a two-count indictment in his case would make him mandatorily deportable. Well, from that I could see we have no idea if he is ineffective. It very possibly means he was performing perfectly under Padilla. He didn't want to venture in the immigration context, but he had told his client you have to get an immigration attorney, which we know he had at detention. That's a possibility. The other language that's consistent with that is I advised him of immigration context consistent with the plea. Well, the plea has two crimes of moral turpitude. So I guess Judge Lake would find out what do you mean, counsel? Did you advise him that as an alien, as a man who overstayed his immigration, his own visa, a man who's engaging in passport fraud, that it is, of course, overwhelmingly likely, his own words at the re-arraignment conference, you will be deported? It could be true. I understand the court. My interpretation of the affidavit, which is only mine and the court's entitled to a different one, my interpretation of the affidavit was because many plea agreements do have some immigration consequence stated within the form of the plea, that he was saying my advice to him was solely on the language in the plea. And we don't know that, but that's a prong. One question we haven't even had resolved, for sure, on this particular affidavit. Well, many things could be brought out at the evidentiary hearing. Yes, Your Honor. You argue you're entitled to evidentiary hearing. And as I read the present record, it does not conclusively rule out the fact that he could even get a visa. He had a, his wife had hired an immigration lawyer, but she was not representing him in the criminal case. And there's no evidence that he got any advice but from Mr. Sims about his criminal case. That's correct, Your Honor. The government's motion to supplement the record with the detention hearing suggested that the affidavit from the immigration lawyer, that there was no advice at the time, on page 95 of the record, given the severity of the immigration consequences as a result of pleading guilty to two crimes involving moral turpitude, any competent criminal attorney would have sought Immigration Counsel advice and recommendation before recommending the plea of guilty. And the suggestion was that that lawyer had been involved in the proceedings, and so it must have been, there must be some conflict between that testimony that Mr. Sims had not obtained advice from Immigration Counsel, had not advised about any language except the language in the plea agreement, of which there is no language about immigration consequences. The evidence, though, in the detention hearing was that that immigration lawyer was there and was talking about having represented the wife and Mr. Batamula in their efforts to get an adjustment of his status by marriage to her and those things. And she never said, and couldn't have said, because at that time there was no plea agreement, it was the detention hearing, there was no plea agreement in play, there was no resolution of a plea agreement, and so that detention hearing and that lawyer's statements was no evidence that, in fact, Mr. Batamula had been advised by that attorney or any attorney. Do we have anything in the record that shows that that detention hearing was considered by the district judge in making the decision? What factors were considered by the district judge in making the ruling? Well, the judge's written order, again, this was a summary disposition on a motion for summary judgment. Mr. Batamula offered these three affidavits from a different immigration attorney, not the one we were speaking about when we testified at the detention hearing, trial counsel and Mr. Batamula. And the government relied upon the waiver of the right to appeal and the language from the rearrangement hearing where Judge Lake said, it is likely you will be deported. That was it. And then we have the written order, the memorandum order of the district court, beginning at page 176 in the record, and the grounds that are stated there on why Mr. Batamula, in the court's opinion, could not prevail on his claim of ineffective assent to the counsel. And the court specifically said, in this case, the court warned Mr. Batamula at the rearrangement hearing that he was likely to be deported. That was the express basis of the district court. So the court only relied on the warning. Is that your position? I'm sorry. Yes, that was our position. Yes, it was. I'm sorry, Your Honor. Mr. By, I will only interrupt this one time in order not to disrupt the proceedings. But I have three quick questions. Were you counsel in the trial court? No, Your Honor. All right. But there's no evidence that whoever was the trial counsel was not present at the guilty plea hearing. And the counsel, whoever that was, never moved to withdraw the guilty plea because of an error, a misunderstanding about the immigration consequences. Correct? That's correct. Six weeks after. I'm sorry. I know you had a third one. I understand. I'm just trying to be quick. Second question is, well, I'll combine them. Second question is, what do you say about our multiple precedents that have said that various misinformation, and we don't even know that this is misinformation, but multiple precedents of this court say that affirmative misrepresentation by counsel about important things like how long will the defendant be in prison could be cured by the plea colloquy? Are you asking for a special that you're saying that Padilla is different from all of the other plea colloquy 2255s? And the third question is, we haven't even gotten to prejudice yet. Exactly how is your client prejudiced under Strickland? Thank you. Yes, ma'am. Your Honor, I don't think it's a misinformation case. I think it's a non-information case. Again, if there's problems with the quality and development of the record, that endures to Mr. Batamula's benefit. Again, this was disposed of by summary disposition, which the district court said, I find no prejudice and I find no harm because I cautioned this person at the plea colloquy. Yes, we do think that Padilla is different. We think the Supreme Court has indicated that Padilla is different. One of the distinctions between the plea colloquy on sentencing cases, for example, and the Padilla cases is that the sentencing is a function and discretion of the district court. I mean, it is understood at the beginning that the district court has discretion with respect to sentencing. Immigration consequences stand outside these proceedings, and that's why we have these cases like the Ninth Circuit case and perhaps the Third Circuit case, the Fazio case, where the judge indicates no one can predict exactly what will happen in an immigration consequence. Immigration law changes and it's very complicated. No one can predict exactly what is happening, but it is almost certain, virtually certain, mandatorily presumed you will be deported, that type of language. So we're making a distinction between sentencing cases where counsel would advise someone, the district court has ultimate discretion to make the sentence, and that can be cured by the court at the plea colloquy. We know after Padilla that the commission changed the rule on plea colloquy and said you should give a generalized statement about the immigration consequences, but it's not tailored to any information particular to the defendant. But Judge Lake went beyond it. He didn't say you have a risk of, he said you are likely to. Well, respectfully, first that rule did not apply at the time that Judge Lake did the sentencing. But I'm saying if your 11B10 just says judges like waiver of appeals, you ought to tell them there's a risk. But Judge Lake tailorized. He said you, defendant, you're likely to be deported. So at that point, why isn't the defendant, what he's saying here legally is even though I was told that and I had my attorney present and I still pled guilty, I now want to be able to vacate my plea because I wouldn't have pled guilty if I knew exactly what he was told by Judge Lake. We have to go through that equation, right? Well, not exactly what he was told by Judge Lake. Well, Judge Lake said you are likely to be deported. Right. But he is now saying I didn't know I was likely to be deported. No, he's saying that he didn't know that it was virtually certain that that would occur, and that's what the cases talk about and that's what Padilla talks about is the difference between... Padilla talks about virtual certainty? I thought it just said risks. You have to advise him as an alien, you have a risk of being deported. But it talks about where the risk is virtually certain, you must tell them one thing, where it's unclear, you must tell them something different. Let me ask another question. If we accept and apply our own coyote factors, can the government just say we'll assume ineffectiveness, but we're using the defendant's own factual basis to say look how strong this guilt is as to the passport fraud? So they just simply submit to Judge Lake on the factor of strength of case. When you finish your answer to Judge Higginson on this point, come back to Judge Jones's third question, which was about prejudice, which you hadn't had a chance to respond. Finish your answer to Judge Higginson, but then come back to the third question she asked you. Yes, Your Honor. Under the coyote factors, can the government just say assume ineffectiveness, that will be too complicated, too many witnesses. Can it then say, but Your Honor, he gave you a factual basis and a factor that the Fifth Circuit has said is strength of the case, this case is so strong he would have pled no matter what. I don't think in this case and I don't think in almost any case that that alone would be enough to carry. If the court has a totality of the circumstances, it merely can't point to the perception of guilt in the case and say that that's enough. You have the burden to show prejudice, so isn't it your burden to show that there was a weakness in the government's case or a strong defense? What kind of coyote factors would you show? You have the burden of showing prejudice to favor your client and indicating he would have gone to trial. Hold on just one minute. Hold your question, Judge Thompson. Let me let him get Judge Jones's question specifically on the prejudice. Since you're leading in that, I'll probably segue back to the question you're asking. But I want to make sure that you address the question. Yes. So Judge Jones had three questions. The first was about the information. The second was the plea colloquy. The third was had we shown prejudice or hadn't. Yes, sir. Yes, ma'am. And also Judge Costa, so on the prejudice question. So on the prejudice question, we have to show a reasonable probability that but for the unprofessional error, the result would have been different. And we had that. And, again, it was a summary disposition on summary judgment. And so the evidence that was able to be developed at the time, we had Mr. Batamula's affidavit. Would you address why he would not have otherwise been deported? Okay. Yes. Hold on. You're getting ahead. If you would for the moment. Hold on. Deal with the prejudice. But frankly, you can come back and we've got time. Just don't want him to miss that Judge Jones is not here. Dealing with the prejudice that, in addition, Mr. Batamula had provided his affidavit, there's a reasonable probability that but for Mr. Sims' errors, I could have gone to trial on the original one-count indictment. Had they done so, I would have refused to make the plea and insisted on a trial as that would have been my only alternative to avoid deportation. And as I read all of these cases that have been cited and in these other circuits, it always comes back to the same thing. Many of the courts ask the appellant, didn't you get a good deal? Aren't you risking a worse deal? Right on, counsel. The question asked was, in a declarative statement, what is the prejudice that you're asserting? The prejudice that we're asserting is that he would not have accepted the plea on two counts. He did not understand that while he was out of status, he had the ability to obtain relief through his application for the visa through marriage. The prejudice under Padilla is to anyone who becomes more deportable because of their plea than they were before the plea, and that's his prejudice. He became more deportable because of the plea. His testimony was, I would not have taken the plea if it was on two counts. I would not have taken the plea on the one. I would have gone to trial and taken the risk. And that's his prejudice. And almost all the courts ask the appellant, but would he take the risk of a greater sentence? Wouldn't he be rolling the dice? And the reason that we have these facts in the setting is because it is more important to these people. The immigration consequences are more important. The ability, not being exiled from the state and the government and the United States is more important to them than the risk of the trial. So we believe we established the prejudice based on the limited summary judgment record that was before the court, based on his testimony and the other testimony, that the difference would have been he was prejudiced because but for counsel's errors, he would not have pled guilty and he would have gone to trial. He lost the opportunity to obtain by visa an adjustment of his legal status. Even if he was deportable at the time because he had exceeded his status, he still had, and that's what that immigration lawyer testified about at the detention hearing, he still had the ability to adjust his status and get a visa through marriage. He has now lost that entirely because of the conviction. And that is prejudice from the failure to warn and from the ineffective assistance of counsel. Your explanation has to be rational. He had not even applied for a petition for adjustment of non-immigrant status. He had done nothing. He had filed three. What is your rational explanation of why going to trial would have benefited him when he would have gone on two counts, would have been facing a higher sentence, and he was already deportable, so it seems like it's almost frivolous. Well, we certainly don't believe it's frivolous. The process that did not, the process that was not engaged with Mr. Batemula was investigation of his facts, investigation of his immigration consequences, determining what the immigration law was, determining if he could make a different, better plea. Padilla says there's three different things you can do. You might elect to go to trial instead of taking a plea because that has better immigration consequences. You might try to negotiate a good plea. And, again, as I was saying, in almost all of these cases, the appellants are indicating that they would be willing to roll the dice and take the risk because it's more important, the immigration consequences are more important, and even the Supreme Court recognized that in Padilla, that that's what Padilla is all about, is that the immigration consequences may be more important than the criminal consequences. Further development on the record of how rational it would be, we believe he's established rationality and reasonable probability and prejudice based upon no information about the immigration consequences and losing the ability to adjust the status and his evidence, his testimony, of which there's no competing testimony and no competing evidence. All right, counsel, hang on to the podium there. I want to make sure your answer was completed to the point Judge Costa began, and then when you finish that, I want to make sure Judge Owen got her question answered, and then we'll send you back to come back up on rebuttal. Putting aside his conclusory statement in the affidavit, which of the coyote factors favor your client? Because similar to what Judge Clement said, sure, immigration consequences might matter more than the sentence, but if deportation looks inevitable either way, the sentence still matters a great deal. So which of those coyote factors favor your client? Pull your mic up. Just which of the coyote factors favors your client? All right, well, one of the factors and the government's argument of the coyote factors, judicial admonishment. We don't believe that the judicial admonishment cured the prejudice and that it should not as a matter of policy cure the prejudice. The fact that he did not move to withdraw the plea at the hearing, again, that's a function of considering what is happening at the proceeding, how the plea colloquy is being conducted. He wasn't even asked at that exact moment if he understood that it was likely. That was a statement that was made and it continued. He's being sentenced with another person. Yes, he has counsel there, but the statements are being made to two people, so we don't believe that the fact that he didn't immediately move to withdraw the plea at the proceeding is evidence. The fact that counsel doesn't step up and say, oh, this likelihood is something I haven't advised my client of, that would certainly be appropriate, but the fact that he didn't do it is just evidence of ineffective assistance of counsel, not that there's no prejudice from the result or that the totality of the circumstances should include what happened at the hearing in the sense that the lawyer didn't step up and say, wait a second, Judge, that he knew he lacked lawful status. Again, we've addressed the fact that they argue he knew he lacked lawful status that he carried over on his student visa, but there were efforts that were being made to obtain the visa by marriage. There were several filings that had been made. There was another one that was in the process of being made, and he lost, as I said, the opportunity to make that adjustment by virtue of the guilty plea. The detention hearing, we don't believe the detention hearing has anything to do with the plea colloquy stage. And finally, to the extent that it's relevant, I mean, if we look at what the district court said in Coyote and the statements that were made in that case, much more detailed than what Judge Lake did here. So we don't think that while there was quite a bit of weight there made, the court said in Coyote, we need not decide today whether the affirmative responses to the admonishment standing alone would be sufficient to defeat the prejudice prong. That was our case. Our case was that the district court solely relied upon the and there was no affirmative response to that particular admonishment about it being likely. The court carried on and then asked a question about the sentencing guidelines and said, do you understand? All right, Counsel, we'll stop you there. Judge Owen, do you still want to ask your question? Well, we still haven't addressed it. We're now at the habeas stage, and so we have more facts now, I assume, and the government has revoked or will not approve his I-130 application. Show me how he has any hope of not being deported, notwithstanding this conviction. He had. This is habeas. We have a record now. Tell me how. He had. Tell me now if this conviction were set aside, how that keeps him from being deported. Because he would then have the right, he would still have the right to prosecute and petition his application for a marriage visa. That's been, I thought the government denied that. There was, I don't know the current status of the very last one that was being prosecuted. I thought the government denied it on the basis of fraud for the third time. But there was another one that was being processed. That's the only, that's, and again, I'm relying from what the attorney said at that detention hearing when the immigration lawyer was talking about it. He still had, and I will correct by supplemental letter if I'm wrong, but it is my understanding that he still had that opportunity. He lost that opportunity only by the guilty plea, not by anything that's happened since. All right, counsel, you've reserved your vote. Come back up.  Ms. Hayden. Can you please report? I would like to respond to a few things before I get to my opening. One, I respectfully disagree that he had the option to try to change his status. He had applied three times based on marriage to a United States citizen, twice. It had been denied for lack of bona fide proof of the marriage, and the third time, and at the time of the detention hearing there was a detainer placed by ICE based on that, that they were going to deny it for a third time, and this time actually for marriage fraud. Once a petition has been denied under the immigration rules and regulations for marriage fraud, they cannot petition again for a change of status based on marriage. And I think I have the provision in the brief, cited in the brief, that says that once it's declined on marriage fraud, they cannot move forward on that. Additionally, with regards to what occurred in the district court in the summary judgment, admittedly, yes, the government did rely on an incorrect application of the law in trying to enforce the waiver, and I believe that the district court did, you know, the judgment itself could have been more extensive if it had not relied on the government's assertion of the plea waiver. However, the government did not rely solely on the fact of the admonishment. It also argued his unlawful status in his motion to dismiss, which was considered by the district court. It may not have been specifically, you know, stated in the summary judgment, but the court did consider it, and the government brought to the court's attention the defendant's unlawful status, that he did not have lawful status to remain, and cited the provision and argued that. In addition, the court also had a lot of other facts and observations that it had presided over the case, that it presided over the plea and the colloquy, and it could also take into account all the things that the district court observed. The sole issue before this court is whether Vatimula established prejudice as a matter of law. The court did not address deficiency, did not address the deficiency prong at all. It's not to concede that he established deficiency. It's only to say that under Strickland's preferable method, if a court can determine prejudice as a matter of law without applying the deficiency prong, Strickland recommends it. If you can determine an ineffective assistance of counsel claim based on prejudice, that is a practical method, and that's exactly what Judge Light did. And if you look at the affidavit, it does create a fact issue as to the deficiency prong, but it does not create a fact issue as to the prejudice prong, and this is why. When you dissect the affidavit, this is what Vatimula states. He states that but for his counsel's alleged deficient advice with regards to deportation consequences of his guilty plea, he could have gone to trial on a one-count indictment had the government done so, and that that was his only alternative to deportation. Well, number one, that relies on an incorrect premise. The government, obviously, from the record itself, it's not a credible assertion. The government who has two counts of superseding information during plea negotiations is going to agree to go to trial on less charges than it had at the time that he pled guilty. And, indeed, at the detention hearing, there was reference to other investigations involving marriage fraud and other types of charges. The plea agreement itself states that the government agrees it will not file additional charges against Vatimula, indicating that there were other charges at the time that he pled guilty. Certainly, the government wouldn't have agreed to go on less charges than it had evidence to do so. And, additionally, as stated, but it is a strong factor, the fact that he was deportable anyway, and he knew it. He knew that his visa had expired. He knew that he had no lawful basis to remain in the United States, that his application for change of status would be, had been denied based on marriage fraud. That was in the making. A detainer had been placed. Knowing that going into the plea negotiations is a big factor, and the fact that even if he had gone to trial on one count, which the government said that would not have occurred, that even if he had, a trial would not have avoided his deportation. And it is unlikely that Vatimula himself would agree to plead to more charges if only one charge was available. For example, if he could proceed to trial on one count, why in the world would he plead to two? This just defies any kind of rational explanation. His bare allegation, a bare allegation, is that Vatimula, He states no evidence, no indicia of any independent evidence, to state why he would have, that he can establish prejudice. For example, he hasn't. Are you still running uninterrupted, or are you? Yes, Your Honor. You're all right. For example, he didn't present any evidence that he had a viable defense, that he had strong ties in the United States, and it was a significant factor for him to stay here. Or any other types of evidence that the court could have considered that would offset or establish some sort of prejudice, other than a conclusory allegation that I could have gone to trial on one count, which itself is inconsistent with the record. And the government submits that this is insufficient on its face. It's conclusory. And with regard to the affidavits, the government's position is they do lack credibility because they did omit important facts. For example, Ms. Anaki, who provided an affidavit, she doesn't submit anywhere in there that she's been representing Vatimula all along, that she knew about his criminal case and had been involved. Whether she specifically gave advice with regards to the plea agreement, we do not know. But we do know that she did have involvement because she testified at his detention hearing. She testified about his immigration status. She knew about his charges because she was cross-examined about them by the prosecutor. They didn't know... Can I ask you a question about what you just said? Isn't it true that at the detention hearing, the government had one witness, Mr. Stahler, who was not an immigration agent but a State Department agent. And he said that Mr. Vatimula was not in the country illegally. He was not deportable, even though he had a detainer against him. Of course, we know that's not a conviction or anything. And the immigration lawyer that was hired by Mr. Vatimula's wife and him testified that it was still possible for him to get approved for residency, and they were proceeding in that direction. Now, I'm sure someone would take issue with that and not believe that, but that prevents the case from being conclusive against Mr. Vatimula as to whether he could have stayed in the country and could have gotten a visa if he had not pleaded guilty to these crimes. And he pleaded guilty without being advised as to the immigration consequences. He filed an affidavit to that effect. His lawyer filed, his criminal lawyer filed an affidavit to that effect. And under 2255, that should have gotten him an evidentiary hearing. Isn't that true, that this was far from being conclusive against him on the immigration situation at the detention hearing? My understanding of the testimony from the agent was that he did not enter the United States unlawfully as an illegal alien, but that his visa had expired, that he had no lawful basis to remain here, and there was also testimony that there was a detainer that had been issued and that there had been a notice that his application to change his status to remain over here based on a marriage to a United States citizen had been denied based on marriage fraud. That is in the record, and the agent did testify, Your Honor, that he was not an illegal alien because there was two different terminologies used. One, whether he came here unlawfully. I believe you're stretching a few points there because I don't think anybody said that he had actually been ruled out permanently forever on getting his marriage approved. A couple of factual and legal questions. The government did not put in the plea agreement any reference to any immigration context, right? That's correct, Your Honor. And this district court, in its Rule 11 colloquy, never individualized to him alone as to both of them on the point of immigration? There was two defendants at the rearrangement. And the question didn't individualize? Yes, Your Honor. And the question didn't say, and have you discussed this point with your counsel? That's correct, Your Honor. Now, if I could add that when the court gave its admonishment, it did state that you know that based on being convicted of two felony, you have two felony convictions. You're likely. Based on these two felony convictions, you are likely to be deported. Right. Okay, that's my legal question. As I read your brief, you are not defending this ruling on the grounds that Judge Lake did. If you know, if you've read the cases closely, Chief Judge Traxler's dissent in Atkinson, the government's position here is that district courts confronted with these affidavits in this situation has to engage in a totality inquiry. So you are saying Judge Lake made an error of law when he relied on the Rule 11 colloquy alone? Well, Your Honor, I guess I'm looking at the summary judgment maybe in a different manner. I mean, I realize that the court did only cite to the admonishment. I don't view it as a categorical rule that whenever a defendant or whenever an admonishment is given, that a defendant is precluded from establishing prejudice. I just, I look at the summary judgment in this case as that it may have been more extensive. Are you asking us to apply the factors on the existing record? Yes. Or are you saying that on remand, Judge Lake would on the existing record, or is your argument that there actually now are credibility issues and therefore he would have to have testimony from various witnesses? I believe, Your Honor, based on the record on the prejudice prong, which is the only issue before the court, I believe that based on this record that it can be established as a matter of law for the reasons not only that he was deportable anyway, not only that there was a prong admonishment, maybe not as extensive as a colloquy in some cases, but still likely deportation is a stronger admonishment than may be or risk or probably or a potential, but also the strength of the government's case was overwhelming. He had no viable defenses. He never asserted that he was innocent. When does the government get the right to make all these pronouncements about the case without submitting to an evidentiary hearing in a 2255 proceeding? Your Honor, on prejudice, I just don't believe that. I mean, it's your opinion he had no viable defense, but you haven't testified at a hearing. You haven't put on any evidence to that effect. How can you come in here and make all those pronouncements in this stage of this proceeding? This man has not had an evidentiary hearing. Your Honor, my position is the government's position is it's the allegation in the affidavit based on the prejudice prong, not on the deficiency. The deficiency, it acknowledges that, yes, he has created a fact issue. The government's position on the prejudice prong that he has not created a sufficient fact issue based on this record. He has presented no evidence to establish prejudice. He hasn't had a hearing. How can he present any evidence? But even by way of his affidavit, he has not. And if you compare a lot of the other cases, where the defendant presented some indicia, the merits of his prejudice claim, in some sort of evidence that he presented, whether it be through an affidavit or another form of evidence, he hasn't presented any other than his conclusory allegation that he could have gone to trial on one count, and that would have been his only alternative. Judge, it's a matter of law that the colloquy itself, as with all 14 prior rights and consequences in Rule 11, means that Hill v. Lockhart doesn't apply. We have none of these problems with the hearing. If Judge Lake is correct, legally, he doesn't then have to have a hearing because he's concluded that the individual with counsel heard that he was likely to be deported, so he can't now say that, well, he didn't think he was likely to be deported. But that's not the position you're taking before us. I think I may have misunderstood, Your Honor. Yes, I do believe that the admonishment is a strong factor. Not strong. It's one factor. I believe under Coyote, I mean, you can look at all the other records. In Coyote, didn't we say we do not decide that issue? It's a text at footnote 9. In Coyote, we did not decide whether a strong and clear admonition alone decides the Hill v. Lockhart. That's correct, Your Honor. I agree, and it kind of feeds into what Judge Jones asked earlier of opposing counsel in that when you're looking at the cases, and I think it falls right in if you look at Missouri v. Frye, getting back to what our position is, this is the type of admonishment that can remedy misadvice or even no advice with regards to a consequence. Let me ask you about this. Can I ask you about this particular admonishment, please? Hold on, Your Honor. Let her finish the response to Judge Higginson, and then I'll come back to Judge Elrod who's been trying to give him attention, and then I'll come back to you. Go ahead. Yes, Your Honor. Missouri v. Frye is a perfect example as well as Fifth Circuit cases that were cited in the government spree that talk about other types of sentencing consequences, and a lot of times they've been direct sentencing consequences, whether it be something to do with your sentencing range, a sentencing guideline, and a lot of times it was misadvice. And the court's admonishment was sufficient to remedy any sort of deficient advice because, and this is what the Supreme Court recognized in Missouri v. Frye, as opposed to cases where you have plea offers that were never accepted, plea negotiations that are never part of the record. Here you have, as a part of the record, the court is able to determine whether the defendant understood the consequences and still wished to plead guilty. So, yes, the government's position is that an admonishment by itself is a remedy. Is it in this case? Is the admonishment sufficient enough in this case? I would defer to the court to determine that. I think it's a strong admonishment. Admittedly, we didn't have a back-and-forth colloquy, but for a lot of Rule 11 admonishments, you don't. I mean, and you're dealing with other direct consequences. But I do believe it is a strong factor in this case, and I do believe that the court can affirm it on all grounds supported by the record. And I believe that the factors that have been submitted in the government's brief are all they weigh against prejudice, every single one of them. Judge O'Rourke has a question. Okay. I have two quick questions. One relates to this. In your brief, though, didn't you say it was one factor, not all, not the only factor? And if we were to say that this was the only factor, wouldn't this put us out of step with all the other circuits? Aren't we on much firmer ground saying it's one factor, not the only factor? And second question is, can you tell me how it calculates, will you say that he's deportable? I thought the issue is he likely to be deported. And we have many people overstayed status, several hundred thousand at least, that are not deported. Does that matter in this? Because overstaying your status, being out of status, doesn't mean you're likely to be deported in the United States right now. So can you answer both of those questions? Your Honor, if I could answer the second one first because it's precious on my mind. Yes. With regards to the deportable provision that Madam Eula faced outside of his conviction, it's stated under the same statute that the crime of moral turpitude is stated. They all have the same language. The defendant is deportable. But you're not likely to be deported for being out of status as a student who overstayed, are you? You don't have a lawful basis to remain. Aren't you likely to stay here unless you get a criminal conviction because the administration has prioritized people who have criminal convictions? That, Your Honor, I don't know, but that could very well be the case. That's why I think when you get into certain advice it becomes difficult because there's so many waivers and exceptions and things that apply in immigration law that even immigration lawyers get it wrong many times with regards to what the consequences are going to be. Even with convictions it happens a lot because sometimes subject to deportation may be a good phrase to say because whether they're actually deported. But we're looking at likely to be deported or something, and you're not likely to be deported if you're a student who's overstayed your visa, as a practical matter, are you? Unless you're already under the radar of ICE, like, for example, in this case where the evidence shows that he had a detainer pending. But in response to your second question as well, because I don't want to miss out on the other question, and that is that with regards to, in this case, we have other factors that the court can consider. So I agree, Your Honor, that you don't have to isolate it, but again we do. If we isolated it we'd be out of step with the other circuits. But I don't see the other circuits having addressed that issue. I don't think it would be out of pace with this court's own holdings that are cited in the government's brief. I mean, I think there is a case where an admonishment alone could remedy counsel's deficient performance. I do believe that based on this court's... Are you aware of any other circuit who's held that? I'm sorry? As opposed to saying totality. But I believe it's totality. But in practicality, practical experience is that you're always going to have other factors. That's why you go back to Strickland. Strickland said look at all the facts in the record that were before the court. You don't isolate what happened at one part of the proceeding or another part of the proceeding. You look at all of the facts. And so that's why the totality of circumstances are very consistent with Strickland, and you're always going to have several facts to be able to assess from the record. And it's going to be hard to look at anything in a vacuum. But I still believe that there may be a proper case where the admonishment alone, if you isolated yourself to that, which I don't think you need to, because you are looking at all the facts, would remedy deficient advice in the proper case. But going back to the other aspect of why the factors weigh against him is the fact that he had a favorable plea agreement, he risked more charges by going to trial, he didn't move to withdraw to be able to plea at any point. So at the time that the court admonished him, the court said, Stop me at any time if you don't understand. You don't have to have permission to stop and ask your lawyer. Can I ask a question at this point about the admonishment? Isn't it true that there were two defendants in the courtroom and Judge Lake went through all the preliminaries ascertaining that they understood they were pleading guilty and what they were pleading guilty to? And then after that, after they were committed, he simply said, You both plead guilty to felonies, therefore you are likely to be deported. And he went immediately into describing the penalties that could be imposed. This is the one point where he did not stop and ask, Mr. Van Mule, do you understand that? Do you understand you're likely to be deported? And if so, do you really want to plead guilty? He didn't do anything like that. This was the mildest, quickest, blandest admonishment, if you're going to call it an admonishment. It was just a kind of a comment in passing. You're likely to be deported. Now let's get down to what I'm going to send you to. That was just a blip after these two defendants had pleaded guilty. And he did not stop and ask them, Did they understand anything about deportation, immigration consequences? Isn't that true? After that particular admonishment, he did admonish on the sentencing range and then he asked, Do you understand? And the defendant said, Yes, I do, Your Honor. So he did not ask him directly after that admonishment. He did, at the beginning of the rearrangement, explain how important it was for Van Mule to get complete and truthful information to all the court's questions because he said, I have to base my factual findings on what you represent, your responses. And during that time, he said, You can stop at any point if you need to talk to your lawyer. If you have any questions or any confusion about what I asked, please stop and have me explain. And again, the court observed the Rule 11 colloquy. He was able to see if he was nodding. He was able to determine from his own observations, as a district court, as a fact finder, during the plea colloquy and at the end, the court determined. I determined that the defendant had entered an informed, knowingly, involuntary plea. And that's what the plea colloquy, and that's what it shows. And I believe the court was there. We weren't. But, yes, I mean, he did not have a specific statement directly following that admonishment. Counsel, let me ask you about your understanding. Will you finish this, Dennis? Let me ask you about your understanding of prejudice here. Taking it at the time of the plea, not today, what is your position on whether there's still an open question of whether he would be eligible to stay if his I-130 had been approved? There were questions, serious ones, about marriage fraud. Was that issue fully resolved by immigration authorities at the time of the plea? In response to that, Your Honor, I can't say with a certainty. All I can say is that we know a detainer has been issued. We know that the application was issued. Say again, what was the first thing? A detainer, an ICE detainer, had been issued. A detainer had been issued. Is that what you said? I'm sorry? We're not understanding each other. You were saying a detainer had been issued. Yes, Your Honor. I didn't quite hear the words. ICE had issued a detainer based on something totally separate from his conviction. I do know also, or his charges, I do know also that he had an application to change his status based on a marriage fraud charge against a United States citizen, which had been declined due to, my understanding of the record is that it had been declined because of marriage fraud, that he had been investigated for marriage fraud. This had been the third time of denial. I do know that the regulations say once it is denied for marriage fraud, you can't come forward again based on that sort of thing. It seems to me the point that Mr. Vi, the briefing has been made here, is that to have two convictions for crimes involving moral turpitude removes him from certain relief, or eliminates him from eligibility for certain relief from removal. So one offense, conviction of a crime involving moral turpitude would not. Overstaying an F-1 visa would not. He would still be eligible for some relief from removal until he got two convictions of crimes involving moral turpitude. But he's still not eligible, even with only one, if he doesn't have a valid marriage. He's got to prove some eligibility beyond just not having two crimes involving moral turpitude. I think it was Judge Owen earlier, maybe it was Judge Clement, was indicating regardless of what the situation was at the time of the plea, we are looking now under 2255 at what the evidence is of prejudice today. And so is it clear in your mind there is no further issue regarding his marriage and eligibility for adjustment of status today? Your Honor, I can't speak outside of the record, but I can. Well, I'm not asking you to. What does the record show? Well, we don't have a record that shows what's occurred with immigration today, what his current immigration status is outside of his conviction. There is evidence of that, but it's outside the record. No, we don't need to go there. You can stay within the record, as we should. I do know that at the time of his detention hearing, all the facts that I've stated with regards to the detainer, and that they had declined it twice before for lack of proof of marriage, bona fide proof of marriage. This time it was for marriage fraud. And it was based on an investigation that had been going on. Judge Jones? Judge Jones? I'm sorry, Judge. That's okay. I'm trying to answer Judge Southwick's question. I'm reading from page 7. Thank you. Yeah, you're welcome. Page 7 of the supplemental en banc brief, which is describing the testimony at the detention hearing. You can all look at it for yourselves, but the testimony was, according to the records of CIS Fraud Investigation Unit, Batamula tried to obtain permanent residency through an alleged marriage to Coffey Batamula. Two prior applications had been denied for failure to meet the burden of proof of marriage. The third application was in the process of being denied for marriage fraud, and it cites the record and goes on beyond that. No more. I assume you accept that, Counsel? I do, Your Honor. Thank you, Judge Jones. And also, he has established or provided no evidence to show that he had any other sort of relief from removal. Even when you look at the immigration statutes, I mean, they are confusing for anyone, but, I mean, when you talk about relief from removal and then whether he would have been eligible to stay for some legitimate purpose, only one crime of moral turpitude is required for you not to be admissible. Well, Counsel, doesn't the very complexity of immigration statutes make this admonishment, if that's the right word by Judge Lake, more troubling, that you need a counsel? I need a Judge Jones' help to understand all the ramifications of what may be occurring by this conviction, by pleading guilty, and a mere statement of this kind by Judge Lake does not begin, nor was it intended to, no criticism of the judge, to explain to that individual what it is that may be occurring by this result, what the immigration consequences are. He was certainly deportable. He was deportable before the conviction, and he needed that explained to him, Padilla says, in some way, either by an immigration attorney or by his defense counsel, really, to have this satisfied. So I'm a little concerned that in this specific category of immigration consequences, just how much help a general admonishment by the judge is. I mean, you're suggesting in your back-and-forth with Judge Higginson, I think, that maybe we should accept this admonishment as enough by itself, that isn't this a particularly difficult context to accept that argument? Well, Your Honor, I do believe that the admonishment was greater than Rule 11 requires. Rule 11 requires now, which was not available at the time that Judge Lake... But Rule 11 is not the test we're looking at. We're trying to figure out if there was prejudice. That's true, Your Honor. But with regards to the effect of the admonishment, I believe it was a stronger admonishment by saying you will likely be deported. And getting to your question with regards to what does Padilla require, and what Padilla requires when the deportation consequence is clear, counsel's obligation equally is clear, well, this case is not a situation where you go and you look in the regulations and you say, oh, here's the offense. It requires research into whether it's a crime involving moral turpitude. Then it requires determination of whether it falls within one scheme of criminal misconduct or two. It's not something that's clear. So Padilla requires that you be advised, counsel including, I mean, that's really what we're talking about, only has the obligation to advise on the risk of deportation. Nobody can know with certainty what the deportation consequences are going to be. And that's why when I talk about the complexity, it also makes it very impractical to be able to try to predict with a defendant what his certain consequences are going to be. Because when we do that, there's been also other cases on the other side where counsel has actually said you will be deported, you're automatically going to be deported, and they aren't. And counsel can come back and say I would have proceeded differently if I would have taken that plea if I would have known that really my deportation wasn't going to be served. I mean, to itself it says it's confusing. Well, if you're the defendant standing and participating in the detention hearing and you're the one who knows that you're deportable and you're the one who knows that these applications have been denied, don't we need to take that into consideration rather than just saying, oh, that was a judicial admonishment, maybe he didn't understand. Well, the likelihood is that he did understand very well because of the facts and the evidence where the defendant was present. So how would he be prejudiced by any further lack of any further explanation? I don't see it. That's a good point, Your Honor. That was in my outline. I'm just reading that out, but that's a very important fact because you have to look at what was in his mind at the time when he pled guilty. So he knows that I'm already looking at deportation. And then it also goes to whether it really was a crucial factor in his decision because he already knew he was deportable. All right. Thank you, Your Honor. Hang on. Counsel, hang on. Judge Higginson has one last question for you. One last question. If we were to say that the Rule 11 statement alone doesn't resolve the Hill v. Lockhart question and let's say it goes back down to Judge Lake and he says on this record I find totality, he still would have pled. So it comes back to us. What would you say is different? What's conclusive so that there couldn't be a hearing? Could you rely on the defendant's own factual basis, which he's trying to say he doesn't? Would it have any relevance that he didn't move to withdraw if it was the same attorney that didn't withdraw that we're presuming was ineffective? Would those factors make any sense? Your Honor, those would not change. They are what they are. Like you said, the strength of the evidence case, the factual basis. You can rely on the defendant's own factual basis that he gave, that he's trying now to vacate. Yes, Your Honor, you can rely on those things for sure. All right. Ms. Hayden, I erred in reading your uninterrupted clock. I stopped you a little early for that. You did? Well, I did, and for that I apologize. That's okay. All right. Thank you. You're from the government. You can handle it. All right. Now, back up for rebuttal. Mr. Fye, let me ask you, is it your position that there is nothing that Judge Lake could have done during the colloquy to have cured or taken care of the prejudice prong, regardless of how detailed he had been, if he had said that deportation was a virtual certainty, if he had inquired as to what kind of advice had come from counsel, if he had given a detailed explanation of the law and repeatedly asked Mr. Batomula whether he understood, and it's a very long explanation from the court. Are you saying that there's nothing that the district judge could have done in this case to have taken care of any prejudice? Your Honor, I think as a matter of policy, it would be better if the judge's functions of determining that a plea is knowing and voluntary were separated from the counsel's duty to advise of immigration consequences. Is it possible that a district court at a Rule 11 plea colloquy could say enough to minimize the prejudice? I think, and I believe I've seen this in at least one case, if the court had a suggestion that the defendant did not understand the immigration consequences or had not been advised of the immigration consequences, the court could stop the hearing. I know there's one where the court says, you need to go talk about this and come back to me. The court's question is, is it possible? I know in the Fazio case from the Third Circuit that the judge there said, knowing this, do you nevertheless want to plead guilty regardless of any immigration consequences that your plea of guilty may entail, even if the consequence is your automatic removal from the United States? Perhaps that goes far enough. The problem is, and what we tried to advocate and what the amicus tried to advocate in the amicus brief is that it simply doesn't work, that the client standing at that last moment where his plea is being accepted and is being told these things by the court and has been instructed to nod yes when the court asks these questions, when it's all over, is simply too late to provide the type of effective assistance from counsel. What do you mean instructed to nod yes? That's sort of offensive. I'm sorry? What do you mean he has been instructed to nod yes? What if he can shake his head no? Isn't he supposed to respond honestly? He is supposed to respond. I'm trying to give those criminal defendants who find themselves before the district judge at the last moment and hear for the first time that there's some immigration consequences. Wait, wait, wait. I have a question. There was a hearing in front of the magistrate judge before the guilty plea, months before the guilty plea, and your client was present, I presume, at that hearing. Yes. And all these witnesses, the ICE witnesses, there was a big discussion in this hearing under oath about his immigration status. He heard that his third petition, I-30 petition, was about to be denied for fraud. And that was the whole point of the hearing, I thought, to determine, among other things, his immigration status. How can he say he didn't know that he was in danger of not having any basis to remain safe? The detention hearing at page 67, the government is cross-examining this immigration lawyer and hands government's exhibit number 6. Do you know what this is? I've never seen it before. What does it look like? It looks like a notice of the intent to revoke the I-30 petition. This is a notice that the United States government is planning to revoke his third pending application. Is that correct? This is what that would represent, which had been filed the day before the hearing. So he did hear that. If he's paying attention, he did hear that it's a notice that they're planning to revoke. It had not occurred. It had not been revoked. We don't know what happened after that point. The immigration lawyer says it was filed the day before the detention hearing. Then we have all the things that are supposed to occur through the plea bargain process. The Frye case and the Padilla case expects and says that the Immigration Council needs to be creative in the plea bargaining process to try to minimize what may be the most important thing to the defendant, and that is remaining in the United States, and that there's opportunities for creative plea bargaining. We don't know what happened. I have a question. But even if you win and then you win again below, you agree that he just goes back to no plea, no acceptance. The government doesn't have to negotiate, and they can supersede based on every other false passport they found. Do you agree with that? I have a question. If this is, you know, in Coyote itself, there was a deficiency with the affidavit that he didn't allege that he would have pled. In this case, is there a similar deficiency? Because he says he would have pleaded to the one count, and there's no indication that there's one count. This is a lingering problem that I'm not sure what to do with in this case. Because there's no offer for one on the table, and his affidavit says, I would have gone to trial on one. There's no offer to go to trial on one as far as I see. And that's the difference between instructing him at the time that the plea's already been approved and it's already been done versus the plea negotiating process. You know, what he says is, I would have gone to trial on the original one count indictment had they done so. I would have refused to make the plea and insisted on a trial. It's reasonable probability, it's rationality, it's not certainty. We have no way to go back and know if counsel had done his job, if he had been effective, if he had negotiated something differently because he had it investigated, been advised, and was aware of potential immigration consequences if things could have been done differently. He says, I wouldn't have pled to two in the superseding information and had the indictment dismissed. Why was that done? The timing suggests it has something to do with the plea. But we don't have the record. We didn't develop a merits record below on what was said during the plea. If it's as easy as the government coming in and saying after the fact, look, you were guilty and you're going to lose. So you don't really have a right to trial. You can say you want to go to trial, but you're guilty, and so you should have accepted the plea. We know that all these cases get resolved by pleas, but people have the right to say, I will take the risk and I want to stay in trial, and to simply say guilt alone disposes of it, or to say the government won't plea bargain, that you have no right under Padilla and you have no right to vacate and cure the ineffective assistance of your counsel because the government won't play or the government won't negotiate. I don't think that's a good functional test on how to resolve these kinds of cases. All right. Thank you, Mr. Speedy, for the red light. That concludes arguments in this case. Thank you to both sides for your briefing and arguments. Before we take up the second case, the Court will stand in the 10-minute recess and be back to start prompt.